UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHAYNE T.,

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. C18-1615 TSZ

**ORDER REVERSING AND REMANDING FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the ALJ erred by rejecting three medical opinions and by finding her impairments did not meet or medically equal a listing. Dkt. 9. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

## BACKGROUND

Plaintiff is currently 40 years old, has at least a high school education, and has worked as a short order cook, telemarketer, and merchandizer. Dkt. 7, Admin. Record (AR) 27. Plaintiff applied for benefits in March 2015. AR 73. She alleges disability as of the application date. AR 38. Plaintiff's applications were denied initially and on reconsideration. AR 100, 129. After the

ALJ conducted a hearing in July 2017, the ALJ issued a decision finding Plaintiff not disabled. AR 36, 17-29.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since the March 2015 alleged onset date.

**Step two:** Plaintiff has the following severe impairments: organic mental disorder, affective disorder/depression, anxiety disorder, substance abuse disorder/drugs/chemical dependency, and post-traumatic stress disorder (PTSD).

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform work at all exertional levels. She can remember, understand, and carry out tasks generally required by occupations with a Specific Vocational Preparation (SVP) level of one to two. She can adjust to changes in the work setting generally associated with occupations with an SVP of one to two. She can have occasional superficial public interaction, and occasional interaction with coworkers or supervisors. Her work tasks must be able to be completed without the assistance of others, but occasional assistance would be tolerated.

**Step four:** Plaintiff cannot perform past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, she is not disabled.

AR 19-29. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 3.[3]

## DISCUSSION

This Court may set aside the Commissioner's denial of Social Security benefits only if the ALJ's decision is based on legal error or not supported by substantial evidence in the record

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 2

as a whole. *Trevizo v. Berryhill*, 871 F.3d 664, 674 (9th Cir. 2017). Each of an ALJ's findings must be supported by substantial evidence. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for evaluating evidence, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954, 957 (9th Cir. 2002). When the evidence is susceptible to more than one interpretation, the ALJ's interpretation must be upheld if rational. *Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005). This Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Plaintiff challenges the ALJ's rejection of two examining and one treating medical sources' opinions in favor of the opinions of examining psychologist Patrick Reilly, Ph.D., and of nonexamining state agency doctors. Dkt. 9. The Commissioner argues that the ALJ was entitled to resolve the conflict among expert opinions and give more weight to Dr. Reilly's and the state agency doctors' opinions. Dkt. 10 at 2. An ALJ is required to provide reasons for rejecting a medical opinion, but not for accepting one. *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). Thus, while the ALJ is responsible for resolving conflicts in medical opinions, the ALJ must give legally sufficient reasons, supported by substantial evidence in the record, for rejecting one opinion in favor of another. *See Andrews*, 53 F.3d at 1043 (affirming where "the

ALJ gave specific, legitimate reasons for rejecting the examining psychologist's opinions and for relying on the nonexamining medical expert's opinion instead").

When an ALJ evaluates conflicting medical opinions, an examining doctor's opinion is generally entitled to greater weight than a nonexamining doctor's opinion. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). If an examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may reject it by stating "specific and legitimate" reasons. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.

The standard for rejecting other medical sources' opinions is lower. "Only physicians and certain other qualified specialists are considered '[a]cceptable medical sources.'" *Ghanim v. Colvin,* 763 F.3d 1154, 1161 (9th Cir. 2014) (alteration in original); *see* 20 C.F.R. §§ 404.1502(a), (d), (e); 416.902(a), (i), (j). An ALJ may reject the opinion of a non-acceptable medical source, such as the licensed mental health counselor at issue here, by giving reasons germane to the opinion. *Id.*

**A.**     **Curtis Greenfield, Psy.D.**

In October 2014, Dr. Greenfield conducted a Psychological/Psychiatric Evaluation and diagnosed Plaintiff with hypomanic bipolar II disorder, a rule-out severe psychotic bipolar I disorder, polysubstance abuse in early partial remission, and borderline personality disorder. AR 958. He opined that she was severely limited in maintaining punctual attendance, adapting to changes in a routine work setting, requesting assistance, communicating and performing effectively at work, completing a normal workday and workweek without interruption from psychologically based symptoms, and maintaining appropriate behavior at work. AR 959. Dr.

Greenfield opined marked limitations in learning new tasks, performing routine tasks without special supervision, making simple decisions, taking precautions for normal hazards, and setting realistic goals and planning independently. *Id*. He assigned moderate limitations for the two remaining areas, completing simple tasks and detailed tasks. *Id*.

The ALJ gave Dr. Greenfield's opinions "little weight" because the severe limitations were contradicted by his mild clinical findings. AR 23-24. The ALJ also concluded, because Dr. Greenfield did not review other records,[4] that his other limitations must be based on Plaintiff's unreliable self-reports. *Id.* Plaintiff argues that the ALJ cherry-picked certain of Dr. Greenfield's findings. Dkt. 9 at 5. The ALJ noted Dr. Greenfield's normal results on memory and concentration tests such as serial 3s and spelling a word forward and backward, and concluded that Plaintiff was therefore cognitively capable of simple tasks consistent with SVP level one or two. AR 23. This mischaracterizes the basis for Dr. Greenfield's opinions. Dr. Greenfield did not attribute his opined severe limitations to deficits in memory, concentration, or cognition. Dr. Greenfield observed erratic eye contact, abnormally fast speech, labile affect, abnormally tangential thought process with abnormally grandiose content, deficient abstract thought, and impaired insight and judgment. AR 961-62. These abnormalities, not memory or concentration, provided the basis for opined impairments in, for example, communicating and performing effectively and maintaining appropriate behavior at work. Normal memory and concentration did not contradict Dr. Greenfield's opined severe limitations; even if Plaintiff is cognitively able to complete simple tasks, she would not maintain employment if she could not behave appropriately in the workplace. The observed abnormalities also support Dr.

---

[4] Lack of record review was not a reason to reject Dr. Greenfield's opinions because, as the ALJ acknowledged, Dr. Reilly also did not review records yet the ALJ accepted his opinions. AR 24.

Greenfield's other limitations, such as in setting realistic goals. The ALJ's determination that some of Dr. Greenfield's opined limitations were based on Plaintiff's self-reports was not supported by substantial evidence. In fact, Dr. Greenfield specifically noted Plaintiff's grandiosity and that she "appear[ed] to be manic" and cautioned that the "information [she] provided may or may not be reliable." AR 957, 958. The clinical interview and mental status evaluation Dr. Greenfield performed "are objective measures and cannot be discounted as a 'self-report.'" *Buck v. Berryhill*, 869 F.3d 1040, 1049 (9th Cir. 2017). Dr. Greenfield's opinions were supported by his own extensive clinical observations, not uncritical reliance on Plaintiff's self-reports. *See Ghanim*, 763 F.3d at 1162 ("when an opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion").

The Court concludes the ALJ erred by discounting Dr. Greenfield's opinions.

**B.     Daniel Pratt, Psy.D.**

In February 2016, Dr. Pratt performed a Psychological/Psychiatric Evaluation and diagnosed Plaintiff with chronic PTSD with dissociative symptoms, severe unspecified bipolar and related disorder with psychotic features, agoraphobia with panic attacks, severe amphetamine use disorder in sustained remission, and rule-out diagnoses of bipolar I and borderline personality disorder. AR 965. In addition to a mental status examination and clinical interview, Dr. Pratt performed psychological testing that indicated "severe" levels of depression and anxiety. AR 967. Dr. Pratt opined that Plaintiff had severe limitations in adapting to routine changes and completing a workday/workweek, and marked limitations in completing detailed tasks, maintaining punctual attendance, requesting assistance, communicating and performing

effectively, and maintaining appropriate behavior. AR 966. Dr. Pratt assigned moderate limitations to the remaining areas. *Id*.

One reason the ALJ provided for giving Dr. Pratt's opinions "little weight" was that his opined limitations were inconsistent with Plaintiff's ability to regain custody of her 4-year-old child in September 2016. AR 25. The ALJ concluded that, even if Dr. Pratt's opinions were accurate in February 2016, by September 2016 Plaintiff had improved. AR 25. The ALJ reached this conclusion by "inferr[ing]" that "Child Protective Service and the court determined that claimant could care for and make decisions in the best interest of a 4-year-old child…." AR 26, 25. Plaintiff contends, and the Commissioner does not dispute, that the ALJ's inference is erroneous because the standards CPS uses for returning a child to her mother only indicate that there is no "significant risk" or "immediate danger" to the child, not that the mother is capable of making decisions in the child's best interests or capable of working. Dkt. 9 at 8-9 (citing Rev. Code Wash. 13.34.030(6)). This reason for discounting Dr. Pratt's opinions, therefore, was not supported by substantial evidence.

The Commissioner argues, however, that caring for a child is an activity that the ALJ was permitted to consider. Dkt. 10 at 6, 7-8. This was not the reason the ALJ gave, however, and is thus a *post hoc* reason on which the Court cannot rely. *See Bray v. Comm'r of Soc. Sex. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995). Although a reviewing court "will not fault the agency merely for explaining its decision with 'less than ideal clarity,' … we still demand that the agency set forth the reasoning behind its decision in a way that allows for meaningful review." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (quoting *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014)). Here, even if the ALJ meant that caring for a child contradicted Dr. Pratt's opinions, none of the work-related limitations Dr. Pratt opined are

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 7

on their face inconsistent with caring for a child, and the ALJ did not explain any such reasoning in a way that allows for meaningful review.  Moreover, Plaintiff testified that her sister provided extensive help with caring for the child, going to Plaintiff's house to care for the child on days when Plaintiff could not.  AR 48-49.  If Plaintiff's sister were not able to help, Plaintiff would have to move in with her mother to get help caring for her child.  AR 49.  Thus, Plaintiff's activities in caring for her child were not sufficient to contradict Dr. Pratt's opinions.  Neither regaining custody of her child, nor caring for her child, was a specific and legitimate reason to discount Dr. Pratt's opinions.

A second reason the ALJ provided was that some of Dr. Pratt's clinical findings differed from Dr. Reilly's, and the ALJ believed Dr. Pratt's were less reliable because Plaintiff was not taking mental health medication at the time.  The ALJ "note[d] that the Digit Span and the delayed memory [test results were] substantially different from Dr. Reilly's exam in August 2015."  AR 25.  The ALJ speculated that the results may have been different because Plaintiff "may have been off all mental health medication" during Dr. Pratt's February 2016 examination, citing an April 2016 treatment record that states Plaintiff "is not currently taking any medication of MH."  AR 25, 985.  However, August 2015 treatment records also show no mental health medication.  *See* AR 976.  The record thus does not support finding that a difference in medication explained differences between Dr. Pratt's and Dr. Reilly's clinical findings.  A reason contradicted by the record cannot suffice to reject Dr. Pratt's opinions.

The ALJ also stated that Plaintiff's "current [treatment] records … do not contain much in terms of mental-health issues."  AR 25.  The Commissioner interprets this as a third reason to discount Dr. Pratt's opinions, on the grounds that Plaintiff's treatment records include some normal psychiatric observations that contradict Dr. Pratt's findings.  Dkt. 10 at 6-7.  During some

appointments for physical health issues, providers made brief notations of normal orientation, mood and affect, insight, and judgment. AR 974, 983, 987, 990. These providers did not perform the in-depth psychological evaluation that Dr. Pratt did, with a clinical interview and complete mental status examination covering areas such as thought process, thought content, and abstract thought. AR 967-68. Other times, providers observed anxious mood, inappropriate mood and affect, irritability, poor insight, poor judgment, and pressured speech, all of which were consistent with Dr. Pratt's findings and opinions. AR 977, 993. Viewing the record as a whole, treatment records do not contradict Dr. Pratt's findings or otherwise undermine his opinions.

The Court concludes the ALJ erred by rejecting Dr. Pratt's opinions, because none of the reasons the ALJ provided were specific, legitimate, and supported by substantial evidence.

**C.**     **Janet Van, LMHC**

Ms. Van, Plaintiff's treating mental health counselor, opined in October 2016 that Plaintiff was unable to work for the next 12 months because of panic attacks and PTSD. AR 969. She explained that Plaintiff "can limit PTSD reaction at home, but not in public situations." AR 969. In June 2017 Ms. Van opined that Plaintiff was "still unable to work due to her PTSD and anxiety." AR 1014. Plaintiff's "severity of trauma reaction compromises her ability to function in a work place." *Id*. The ALJ discounted these opinions in a single sentence, giving Ms. Van's opinions "little weight, in view of the claimant's self-reported activities and longitudinal records discussed in this decision." AR 26. The only self-reported activities the ALJ mentioned in the decision, citing Plaintiff's July 2015 Function Report, were that "she could care [for] her 3-year-old child, do household chores including laundry and cleaning, and prepare simple meals daily for 'an hour or so' each day." AR 20 (quoting AR 286-87). All of these

activities are done at home, and thus do not contradict Ms. Van's opinions that Plaintiff can limit her PTSD reaction at home but not out in public. Plaintiff's self-reported activities were not a germane reason to discount Ms. Van's opinions.

In assessing the longitudinal record, the ALJ noted that during the relevant period Plaintiff did not receive much mental health treatment, including medications. AR 22-23. The ALJ also found that therapy focused more on Plaintiff's addiction and her efforts to regain custody of her child than on "her mental-health issues." AR 23. On the contrary, the treatment notes the ALJ cites extensively address mental health issues. The notes show diagnoses of PTSD, major depressive disorder with psychotic features, and panic disorder. AR 938. In treatment notes that mention Plaintiff's efforts to regain custody, Ms. Van also noted "work on emotional regulation" and efforts "to help herself when [trauma] triggers hit." AR 944, 945. The treatment notes contain diagnoses of substance dependence, but addiction is not even mentioned in the descriptions of therapy sessions. AR 938, 943-55. And there is no dispute that Plaintiff had been sober for more than six months before her alleged onset date. AR 22. Regarding the amount of treatment received, the ALJ noted that Sound Mental Health treatment notes ended in December 2015, but failed to note that Ms. Van moved her practice to Sea Mar and Plaintiff saw her there beginning April 2017. AR 22, AR 1015-19. Those treatment notes show that Plaintiff "stays home because of fear of triggering events" and the goal of therapy was "diminishing anxiety and [PTSD] reactions especially in public." AR 1015-19. One triggering event was simply being in a store reaching for something on a bottom shelf when a man leaned over her and reached for something on a higher shelf; Plaintiff "screamed and cowered trying to get away" and ran out of the store. AR 1018. Because the longitudinal record shows more

therapy than the ALJ acknowledged and addressed mental health issues directly, contrary to the ALJ's characterization, this was not a germane reason to discount Ms. Van's opinions.

The Court concludes the ALJ erred by discounting Ms. Van's opinions without providing a germane reason supported by substantial evidence.

**D.     Listed Impairment**

Plaintiff contends the ALJ erred in finding her combined impairments did not meet or medically equal a listed impairment. Dkt. 9 at 16. The Commissioner argues that Plaintiff did not raise this issue before the ALJ because her attorney did not mention any individual listings in the hearing. Dkt. 10 at 13. However, the ALJ expressly addressed Listings 12.02, 12.04, 12.06, and 12.15 in his decision, indicating that these listings were adequately raised in the administrative proceedings. AR 20.

To satisfy the criteria for any one of these listings, Plaintiff must show one extreme or two marked limitations in any of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing herself. 20 C.F.R. Pt. 404, Subpt. P, App'x 1 § 12.00; *see* AR 20. The ALJ found that Plaintiff's limitations were "moderate" in all four areas. AR 20. The ALJ based the concentration, persistence, and pace limitation on the Plaintiff's ability to testify at the hearing, which lasted over an hour. AR 21. The ALJ did not differentiate reasons for the other three categories, but cited caring for a child, laundry, cleaning, preparing simple meals, leaving the house daily, being an "avid reader," and interacting with medical providers. AR 20-21.

Plaintiff contends that Ms. Van's opinions establish an extreme limitation in the ability to interact with others. Dkt. At 17. Because the ALJ must reconsider Ms. Van's opinions on

ORDER REVERSING AND REMANDING
FOR FURTHER ADMINISTRATIVE
PROCEEDINGS - 11

remand, the ALJ should also reconsider whether the opinions establish the criteria for a listed impairment.

**E.     Scope of Remand**

Plaintiff requests remand for an award of benefits or, in the alternative, for further administrative proceedings. Dkt. 9 at 18. In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison*, 759 F.3d at 1020. The Court has flexibility, however, "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Here, Plaintiff does not even attempt to show that the record is fully developed and further administrative proceedings would serve no useful purpose. Even if on remand the ALJ accepts the opinions of Dr. Greenfield, Dr. Pratt, and Ms. Van, conflicts between those opinions and the opinions of Dr. Reilly and the nonexamining state agency doctors remain and must be addressed by the ALJ in the first instance. The Court concludes that enhancement of the record would be useful and, accordingly, remand for further proceedings is appropriate.

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate the opinions of Dr. Greenfield, Dr. Pratt, and Ms. Van and resolve conflicts among medical opinions; reconsider whether Plaintiff's impairments meet or medically equal a listed impairment; reassess the RFC as needed; and proceed to step five as necessary.

DATED this 28th day of August, 2019.

Thomas S. Zilly
United States District Judge